Judge Benjamin and I in particular want to welcome Judge Berner, who is in Baltimore and on the video. And we look forward to Judge Berner, our most recently appointed judge on the Fourth Circuit Court of Appeals, when she's participating remotely today from Baltimore. And at any point in time, Judge Berner, if you have questions of these lawyers of any nature, if you have trouble getting our attention, hold up your hand and I'll keep my eye out and we'll recognize you. We look forward to the arguments of interesting cases from good lawyers. And with that, our first case is United States v. Bullis. It's an appeal from the Eastern District of, I think, of North Carolina. And Mr. Brignac of the Public Defender's Office. Good to have you with us, sir. Thank you, Judge King. Great to see you again. And yes, Eastern North Carolina. I'm very proud. So may it please the court, I am Eric Brignac for Stephan Bullis. And this morning I want to address two errors that the district court made. First, it increased the sentence on counts that Mr. Bullis had already fully served in violation of double jeopardy. And second, it violated this court's rule in Rogers and Singletary by issuing a written judgment that contained conditions of supervised release that were not part of his sentence. And I'm planning to start... Both sentencing errors, you're claiming. Yes, Your Honor, because it was a resentencing. And your client had a life sentence. He did. He had two life sentences on the 924c counts that were... Two life sentences for sending bombs into his wife's workplace. Oh, yes, Your Honor. I understand. That was back in the 90s. A horrific crime for which he has great regret and for which he has served an extraordinarily long sentence. In 1996, I think he was sentenced. Yes, he was in for 331 months at the time of granting the motion dismissing the 924c. I'm just trying to put it in context. Yes, a horrible crime, a long sentence, and... Let me say, we deeply appreciate your work in cases like this. We very much appreciate having you here. Thank you. But sure, there were some Supreme Court cases, and our cases too, that changed the sentencing laws a little bit. And as a result, he got a chance to get a resentencing. He did, Your Honor. He got a resentencing after the 924c's were vacated. And 924c relates to sending these bombs in packages. Exactly. And you know, it was... Into his wife's workplace. Categorically, I mean, they're not really relevant today, but I agree background is good. Categorically, the arson crimes were not crimes of violence for purposes of 924c, and so that's why we're here. That's why we're here. He was resentenced on the other counts. He had life sentences, so those life sentences were vacated. Yes, sir. And he was resentenced, and you're claiming that that resentencing violated the double jeopardy clause of the Constitution. Two claims, Your Honor, exactly. And, if this court were to agree to a Roger Singletary remand, I could also see prudentially under constitutional avoidance. If we win on Roger Singletary, we'd get a full resentencing, so we may not address double jeopardy. But I do think the double jeopardy claim was plain error. Silvers... So you're talking about Eichwander. Oh, constitutional avoidance? I don't know if I'm... You remember the old Eichwander case. I unfortunately don't, Your Honor. That's a Supreme Court case on constitutional avoidance. That's where it all came from. If we can decide it on a non-constitutional basis, we do that. And exactly, Your Honor. So I'm saying that may be what this court does, depending on how this court sees the merits of the Roger Singletary resentencing. Why don't you argue that second issue first? I mean, I just... No, yes. We don't want to decide constitutional questions. We don't have to. I am here to answer the court's questions. And I think we... How is it double jeopardy anyway? He had a life sentence. It is double jeopardy under Silvers, Your Honor. So he hadn't deserved the life sentence. Well, and that... And he was resentenced. So it can't be double jeopardy. In common sense, it doesn't anyway. Well, and I think the argument Your Honor is making, I think, can be described as the sentencing package doctrine, which was addressed and rejected in Silvers. So that's our argument there. Where's the Silvers case come from? From this court, 1996, Your Honor. And it was a very similar situation. A count was vacated, just like we had a count vacated. The government's going to say that doesn't control it. Of course it is, Your Honor. And that's why we're here. Well, we have Smith too now, in 97. We have Smith. And I think the argument is that Silvers is different, in that in Silvers, this whole notion of expectation of finality, and that your client did not have this expectation of finality because of the total sentencing. And that when we send it back, when it goes back to the district court under the sentencing package, that the district court has to go back through 3553A and look at the entire sentence. I think that is a very good articulation, Judge Benjamin, of the government's position. And I would say, I guess my strongest counter to that is that if you were to have applied that rule in Silvers, Silvers would have come out differently. And Smith lacked the power, as a panel of this court, to overrule Silvers. And so that's our strongest argument. This three-judge panel can't overrule that three-judge panel. Yes. And Judge Berner, I think, has a question, Your Honor. Go ahead, Judge Berner. Thank you. So, Mr. Bigneck, I don't actually agree with you that Smith conflicts with Silvers. In Silvers, the sentences ran concurrently. So they were independent of one another and began at the time of his incarceration. But in Smith, the sentences ran consecutively. And so we had to think of them as a package. Why doesn't this explain the distinction between the two cases, Smith and Silvers, and allow them to coexist? I think it's incumbent upon us not to find that one panel decision conflicts with another, where we can read the two together and not in conflict with one another. And I see the distinction between the two as that one concerned a concurrent sentence and the other concerned a consecutive sentence. Is that not really the difference here? It is not. I don't think, Your Honor, that is not the reasoning on which the Smith court relied. So that could be a distinction. And, Your Honor, I also understand, just to be frank, I am up here on plain error. So the fact that we've gone about six, seven minutes now and haven't come to a clear resolution means I may, under constitutional avoidance, jump to my second question. I always understood being here on plain error was a bit of a heavy lift. And I think in terms of the Roger Singletary error, we allege two of them. And I think the second error, the search condition, I think I can give an example that will clarify why that is not just, as the government would say, a mere clarification. In his sentence, his oral sentence, it says, to supervise you, we can search your house, your car, data collection devices, et cetera. Doesn't say papers. Doesn't say effects. The written condition purports to say we can search any house. It doesn't purport. It says what it says. It says what it says. I guess I'm saying it's not his sentence. You know, any house, any residence, any vehicle to search your effects. So the example I'd like to give this court is what if Mr. Bullis had a box, a suitcase that he put in a bank safe deposit box? Under his sentence, that would not be searchable. It's not an electronic device. It's not his house. It's not his car. And obviously, an extraordinarily high subjective expectation of privacy. Under the written judgment, yes, your honor. Didn't the government, didn't the district court, excuse me, identify that there are standard terms for the district and then tell Mr. Bullis that he would comply with them? And don't those standard terms include the end effects language? And your honor, that ties into, I would have to relook at those standard terms to see if it has the effects language. I would have two responses, even if it did. First, as you know, our first argument is that she did not actually incorporate or impose all of those standard conditions. She only incorporated or imposed the ones that she enumerated. And secondly, even if she mentioned that, even if this court disagrees with us on that issue, by then specifying a specific search condition, the specific would trump the general. So even if effects is in that standard list, and I will go back during rebuttal time and get that exact language, I think any confusion on that point, any reasonable defendant would say the search condition she imposed is the one she announced. And under that condition, again, my example, if he has a suitcase, if he has a bag, if he puts it in the bank, if he puts it at his family member's house, under his actual sentence, the orally announced sentence, probation could not search that without a warrant. Here, probation officer could come up to him and say, Mr. Bullis, let's go to the bank, get your key to the safety deposit box. And if you don't let me in there, I'm going to send you back to jail. So that is not just an extra word. That is not just a clarification. It is just an extra one word. Or two words. Two words. Two words difference. You're saying two words difference makes the entire difference. Makes the entire difference, right. So I guess what I'm saying, to be more precise, one word can make all the difference. So I think the government will say, oh, it's just the word effects. It's just this add-on. But in terms of the real world effect. And you're talking about the difference between what the judge said from the bench and what the clerk's office probably wrote in the criminal judgment. And that's a hard market. Well, and it's the difference between what he was sentenced to while he was present and what was written in that judgment. And I think, and I'm not behind the scenes. I don't know how these judgments are actually physically produced. But you do bring up a good point, Judge King. This is not a- I don't know how they're produced in every courthouse. But I have some experience with how they're produced where in high practice law. And I think they were pretty much produced in the clerk's office. The next day, probably, or the day and day of the sentencing. And they were written up and filed what happened in the courtroom. And the discrepancy, that's where the law came up. They had discrepancies between these written criminal judgments and what was said in the open court. And people got relief on it. But this was, you're talking about hanging your hat on one word. I guess- I was going to say, you're stretching this thing. And you're trying to stretch the thing, it seems to me. I guess I want to bring up, Your Honor, just how easily, because I think your question sort of gets to this. How easy this would be for a district court to get correct? However it's done by the court within the chamber- They try to get correct. They do, Your Honor, but- like yourself, and the government are asked to help them. I remember, you cited that Smith case a few minutes ago, correct? The Smith case, yes, in our first- The recent one. You're talking about the recent Smith case? Oh, yes, Smith, yes. The one I wrote. Yes, Your Honor. There's a footnote in there about the judge asked the lawyers, is there anything else from the bench? And they both said no. And then they came in and complained that the judge didn't do it right. And, Your Honor, I would say- I mean, the lawyers have some responsibility too. And I would say two responses, Your Honor- Maybe they have, maybe the government has more than you do even, but you're an officer of the court too. I'm talking about you in the context of defense lawyers. Your Honor, the error did not occur until the written judgment was issued. So this was not a situation where, say, the district court imposed a condition, said something that was ambiguous, and perhaps there's an argument the lawyer should have asked for clarification at the time. The moment the error occurred, it's when it appeared on the docket, not a second before. And at that point, it's too late. That's why we're here de novo, and that's why we're not here on plain error. Does harmless error apply in that situation? It does. No, Your Honor. Under Rule 52, it applies. Harmless error. Every error has to be prejudicial. I've never- Every error under Rule 52 of the criminal rules has to be a prejudicial error before you can get any relief. So non-prejudicial errors are not to be recognized. That's what the rule says. The fact that Mr. Bullis, upon pain of reincarceration, is subjected to a condition that he was not sentenced to is prejudicial, Your Honor. I think part of the reason Rule 52 has never come up in this context is if it's not- But it still has to be reviewed for harmless error. It's a non-constitutional thing. You said that. It is. All right. And you said that. And so it has to be reviewed for harmless error. And this is the guy that tried to blow up his wife and got a life sentence. We know what the facts are in the case. Judge Berner, I saw you raise your hand. Yes, thank you. The government argues, and I think my colleague, Judge King, is getting to this point that the as-effects language to those two extra words are simply clarifying what the district court pronounced its sentencing. Why should we not agree with that? Because, Your Honor, in the context of the two, the announced sentence and the written condition, we see how broad effects are. Because if you look at the actual orally announced sentence, Joint Appendix 579-580, it's limited. Your car, your house, your person. So there is a limitation to him. But then if we look at Joint Appendix 289, the written judgment, any property, house, residence, vehicle, and your papers and effects. So it is, in that context, much broader. The government says, look, if we can search his house, we can search anything in that house. True. I don't disagree with that. But this is broader. This is if he puts some effects at a friend's house, in a safety deposit box, in a family member's house. So as this court knows, we read everything in context. And in context, this is broader than, hey, we can search your house. We can search everything in it. We can search anything you own anywhere in the world. It's different in kind that, Your Honor, is why it is not harmful. I see I have four seconds left. So if there are any more questions, I'm happy to answer. I see you in rebuttal. Thank you. Ms. Barnard, any further questions? Thank you, Mr. Brinkman. You saved some time, too. Thank you. Ms. Englander, good to have you with us. Thank you, Your Honors. May it please the court. My name is Kate Englander, and I represent the United States. The district court did not make a motion. You're an assistant United States attorney in the Eastern District of North Carolina. I am, Your Honor. Good to have you with us. Good to be here. Thank you. The district court did not plainly err in resentencing Stefan Bullis to 450 months on the remaining counts of his sentence for mailing pipe bombs to his wife. I'm going to first address the double jeopardy issue. The sentence did not violate double jeopardy. In fashioning that sentence, the sentencing court relied on this court's binding precedent, United States v. Smith. Well, of course, he brings up Silvers. So tell us what is distinguishable between Silvers and Smith. He seems to think that Silvers is the controlling precedent and Smith is not. Thank you, Your Honor. I want to address a couple of points about the tension between Smith and Silvers. First, I think it's important just to recognize that Smith is decided less than a year later than Silvers. And the court in Smith directly addressed Silvers in its opinion. It reckoned with that case. It addressed what it thought to be the principle holding of Silvers, which is that once a sentence is fully discharged, double jeopardy does attach. But what it said was Silvers doesn't directly address the question of when is a sentence fully discharged. And Smith answers that question by saying it is not fully discharged until all of the component parts of that sentence have been fully served. And in Silvers, and I think Judge Berner kind of alluded to this earlier, whereas here, and I guess and also in Smith, in Silvers is this concurrent sentence, right? And if I recall correctly, he had served the five years, which was a statutory maximum on the, I think it was a fraud and a drug charge, right? That's right. So, and I think another part of Silvers that's important, and this is really in response to something raised in the opposing counsel's reply brief. In Silvers, the government actually conceded that those, the defendant had already served seven and a half years. The government conceded that it was error for the court in Silvers to have revisited those five-year concurrent sentences. So, to the extent that Silvers is addressing that question, it wasn't really raised by the parties. The government and the defense in that case both agreed that the court erred in revisiting those five-year sentences. Yeah, and in essence, basically, I think in Silvers, they were not giving him time to serve by the time that he served. He was going to start a new sentence, a completely new sentence. That's right, Your Honor. And that was not the case in Smith. And it's not the case here. Okay. You know, in Smith and in this case, if the court were to find that double jeopardy, the resentencing violated double jeopardy, the defendant would just be released. I want to address a couple other points about Smith, because I do think opposing counsel is correct. This is plain error. So, to the extent that the court erred in following Smith, as opposed to Silvers, if there is a tension there. Now, which Smith case are you talking about? I'm talking about United States v. Smith from 1997, Your Honor. I understand. See, earlier there, I was talking to your colleague. I was talking about a Smith case that came down in the last 30 days. A lot of Smith cases. Understood. It's a common name. So, what I'm referring to is Smith, which is what we contend is the binding precedent on this court. The old Smith case, not the new Smith case. Probably not the oldest Smith case, but at least an older Smith case. And I think it's also important that this court, in a couple of unpublished opinions in 1997 and 1998, recognized itself to be bound by Smith, not by Silvers. And in one of those cases, United States v. Butler, again, it's an unpublished case from 1997. Well, we aren't bound by those either. I understand, Your Honor. But I think it's important for this reason. And one of the panel in that case was composed of Judges Russell and Hall, who were also on the panel in Silvers. And they did recognize that they were bound by Smith to the extent that there was a tension between them. Well, they were very able judges. I'll tell you that. One of them was my direct predecessor. I'm sure that's true. I also, and this is really, goes more, I understand the court's not bound by it, but it does go to plain error. The district court, to the extent that it followed Smith in error, that error was not clear or obvious, because there was, this court itself has recognized itself. Now, where did plain error come in here? So it comes into... On that sentencing stuff, we pretty much settled that, didn't we? Yes, Your Honor. So the government's position is that it was not error at all. But to the extent that there was any error, it's not plain because to the extent that the court, this court believes that the court should have followed Silvers as opposed to Smith, that is not clear from this court's case law. And also, I'll just point out that other sister circuits that have addressed this issue have also found that a sentence is not fully discharged until the component parts are served, including the First, Second, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. circuits. And those courts, to the extent that they've looked at this court's precedent, have found that this court, that the precedent is Smith and not Silvers, that Smith is the controlling case. That's just, and again, this... I want to go back to something you said earlier, because you said that if we found that the sentence violated double jeopardy, then you said Mr. Bullis would be set free. But I don't think that's right. If we found that this was in conflict with the double jeopardy clause, wouldn't the answer be that he would be sent back to the district court for resentencing? No, Your Honor. So, on the remaining counts in this case, after the 924Cs have been vacated, the defendant, the highest sentence the defendant was given on any of the remaining counts was 240 months. He's already served more than 240 months. So, if, and again, we don't think that that's, we think that the defendant was sentenced as a package. He didn't have an expectation of finality in his sentence because he was initially sentenced to life. And so, the court could revisit the entire sentence when it resentenced him. And his aggregate sentence now is 450 months. That's correct, Your Honor. So, he was... And he served, altogether, 300 and some of that. That's correct. You've got about 100 months to go. That's right, Your Honor. So, what you're saying is he would be sent back for resentencing, but the sentence that he served would have been found to have been completed. That's right. So, if the court, if this court finds that it violated double jeopardy for his sentence on count two to be increased from 240 months, which was the initial sentence, if that violated double jeopardy, then he has served fully the only sentences that would be remaining. And so, Your Honors, again, I think it's also important to recognize that the sentencing packaging theory has been embraced by this court in other contexts. Earlier this year, in United States v. Richardson, this court, in a First Step Act case, found that it was appropriate when that sentence was sent back for resentencing for the court to revisit the entire package. That's consistent with what this court has said about the broad discretion of the district court to fashion an appropriate sentence. And also, this court has recognized that that is in line with the way that district judges practically make their sentences. They don't look at it count by count in a vacuum. The counts aren't siloed. They look at what the overall effect on the defendant would be. That's consistent with what the statute requires, how the guidelines look at relevant conduct. And so, we believe that Smith is also correctly decided. So, let's talk about this word, effects. Counsel says that it's broad, it expands, that it expands the conditions. And I think your argument, in brief, is just that it clarifies it. Tell us why it's not broad, why it doesn't expand. Because effects is a pretty broad word. Yes, Your Honor. So, when the court imposed orally at sentencing that condition, it described the places that could be searched. Effects just clarifies that within those places that the court is ordering the defendant must submit to search, that it can also search effects within those areas. So, our position is that defense hypothetical, where there's a safety deposit box, that would not be covered by either the judgment or the oral pronouncement. So, really, effects is just clarifying what within the locations that the court has ordered him to subject himself to search can be searched. It's not, it doesn't expand the scope of the search condition, and therefore, it's not a material difference. And she also added papers, which was not in the oral sentence. Yeah, go ahead. Sorry, Your Honor. Thank you. Papers would also, it would be the same thing. So, the places that the court said could be searched, vehicle, residence, electronic devices, within those places, papers and effects can be searched. That's clarified in the written judgment, but it doesn't expand the places that can be searched. How does that not conflict with our ruling in Rogers, which it requires the oral pronunciation to be explicit and accurate? So, Rogers also said that it doesn't have to be a perfect match between what is orally pronounced and what is in the written judgment. It just can't be a material difference. So, really, what we're looking at, I think is... How is this not material? It's not material because it doesn't expand what can be searched. The effects or the papers that could be searched are just going to be within those locations that the court has already explained orally at sentencing that the defendant must submit to search under his conditions. Is that material difference? In what case have we said that in? Your Honor, United States v. Mathis, which I believe is the subject of one of our 28J letters, talks about materiality. It's also... That material difference is your statement then? It is, Your Honor. All right. Okay, that's your... Okay. But this court has never required the district judge to read word-for-word what the condition is and then have that word-for-word match what is in the written judgment. We have used words like expressly or explicitly and things like that too, didn't we do that in Rogers or some other case? There's so many of these things. What do you say about this Eichwander thing? Are you asking about the constitutional avoidance? Well, I'm asking about Eichwander. How come nobody knows anything about Eichwander? Constitutional avoidance doctrine is that we don't reach constitutional questions unless we have to. And he says we don't have to. Your opponent does, your colleague does. We don't have to because we can decide it on a non-constitutional basis and that's his second issue. So we don't have to deal with this double jeopardy problem. Your Honor... Double jeopardy is constitutional. Yes, Your Honor. The government's position is you do have to deal with the double jeopardy question here first. You're saying we do have to deal with it? Yes, because if the defendant... But then we have to deal with the non-constitutional question first. No, Your Honor. Well, we don't deal with constitutional questions unless we have to. But in this case, Your Honor, if the defendant sentence violated double jeopardy, there is no resentencing. He's effectively already served his entire sentence. So if the court were to decide this just on... You're saying we can't avoid the constitutional question? Not here, Your Honor. Because if the court decided to remand this on a Rogers Singletary issue, the question would still remain whether reimposing a sentence of 450 months or any sentence at all at this point would violate double jeopardy. And so the government's position is that question needs to be addressed first for the district court to be able to address anything else. That's turning an ice wanderer upside down. I don't believe it is, Your Honor. That's what your colleague says. The government disagrees. I think in this case, because the double jeopardy question goes to the question of whether this... whether the defendant should be in prison at all anymore, it needs to be decided before there's a decision about whether there should even be a resentencing. But our position, again, is that there doesn't need to be a resentencing at all in this case because the court did impose the standard conditions. It referenced them, ordered the defendant to comply with them, and that was clear from the record, clear enough that he is subject to them. What about language? There was some language used in there that contemplated something happening later. It said, you will agree. You will agree. You will agree. Is that sufficient to do it that way? And I don't know whether they're even raising that or not, but that kind of jumped off the page at me. It is, Your Honor. As if, later on, when they went to Sergei's house, that he was agreeing that he would agree or something. Your Honor, I don't believe that precise issue is raised. But all this contemplates that he would be released on supervised release. These conditions. That's correct, Your Honor. And because the defendant has begun... If he's doing 450 months in whatever age he is, that's some way in the future. It's not that far in the future, Your Honor. I believe the defendant has... What about harmless error? You all don't even argue that. I brought that up for you. Well, we argue that... What about Rule 52? Your Honor, I think the opposing counsel is correct that if there is a Rogers error, it is a de novo review in the court. You're saying it's structural error, then? Yes. The defendant concedes that a Rogers error is structural error. Now, you'll be making some new law, I think. For purposes of this argument, Your Honor, I think this court has said that if it's a Rogers error, it needs to be remanded. We do not believe there was a Rogers error here on either of the two issues raised by the defense. Rule 52 says any error has to be prejudicial to be recognized. Who repealed that? I may be misquoting the thing, too, but that didn't affect us what it says, I think. You all got rule books in front of you. I suspect you know what it says. Your Honor, I don't believe that any error was prejudicial here. I'm not sure . . . It has to be prejudicial. That's what we call the harmless error doctrine. Then there's the plain error doctrine. It's another step. We review it de novo. We review it for harmless error. When we review it, that's what Rogers said. Judge Motza said in a later case, maybe, about Rogers. It's a review de novo because they don't have an opportunity to object because the order, the judgment, the criminal judgment is usually not entered until the next day, maybe, or later in the day. It's not entered at the time of the hearing. It's written up later. So the opportunity to object is not there. You have to review it de novo. There's no plain error review. The de novo review triggers Rule 52. You mentioned Mathis, which is a decision from, I guess, earlier this year from this court. And also, the Beverly case from 2023 where it says, this court has said that it has to do the oral and the written conditions have to be a match. If not, it's reversible error. That's correct, Your Honor. But they don't have to be a percentage error. Word-for-word match. This court has never said that the conditions need to be a precise word-for-word match. They just can't be different in a material way. There are cases, for example, where the court has imposed a search. You have to subject yourself to search based on reasonable suspicion. And then the written judgment has then said, actually, it's suspicionless. You have to subject yourself to warrantless search at any time with or without reasonable suspicion. And obviously, that's a problematic difference. That's a substantial difference in what the expectations of the defendant are at the time he leaves the courtroom. Here, what was pronounced orally and what was in the written judgment are not different. The defendant is still subject to search at the places that were named by the court in the written judgment as well. Ms. Englander, one of the things you say is that the district court orally pronounced that the defendant shall comply with the standard conditions of supervised release. And I guess what you're trying to say is that the standard conditions made clear to the defendant that the conditions would include search of his effects. Is that what you're trying to say there? Because to me, I think the language standard conditions is vague and it's not clear what standard conditions were referred to there. And so it doesn't solve your Rogers problem. So those are two separate issues. The standard conditions of release are adopted by the district and they were imposed by the court by referencing them and ordering them. The search condition is a special condition. So it was written up in the PSR. So the defendant had notice of it that way. The court imposed it orally at sentencing, separate from imposing the standard conditions. And then it was included in the written judgment. Was it enough for the court to say at the oral pronouncement, standard conditions of supervised release? That's not what those standard conditions are called, right? They're not called standard conditions of supervised release. They're called standard conditions. No, I guess the court said standard conditions in the district. And what they're called is they're called something else, right? So the court got the name wrong. Your Honor, I see that I'm out of time. May I answer questions as long as you receive questions? Thank you, Your Honor. So there are standard conditions in the district. They are referenced in a standing order that has a specific number to it. But there's only one set of standard conditions. They are also happen to be the same standard conditions that are in the guidelines. So when the court references those standard conditions, there's only one set of standard conditions that are being referenced there. So you're saying it's enough for the court to simply say standard conditions and doesn't have to reference the number that you mentioned or even to say that they're standard conditions of supervised release? That's right, Your Honor. In this case, the court did say standard conditions. We have standard conditions in this district. She went on to sort of explain some of what those are. She provided a few examples. She even used words like, you know, things like this. And then at the end, she said, standard conditions you'll comply with. That was enough to incorporate those standard conditions that are referenced. And if there are no further questions, Your Honors, I'll take my seat. Thank you. Anything else, Judge Berner? No, thank you. Thank you very much, Ms. Engler. Thank you. Mr. Brignac? Thank you, Your Honors. Judge Berner, I wanted to say I did look at the standing order that is at issue. Obviously, we in the government dispute whether it was incorporated. It does not have a search condition. So even if this court were to believe that Judge Flanagan did incorporate them, it wouldn't have changed the search condition. And we've talked a lot about the word effects. I think maybe we need to, again, read that in context. Another word that's very different is any. The search condition, then, would not be called a standard condition. It would be called a discretionary condition? A special. A special condition. The search condition is a special. There are different names for the others. Different. There's mandatory. There's variations on standard. And that gets to Judge Berner's point of it being. Is a mandatory a standard? Mandatory, standard, special. So it helps keep us employed with all of the complexity. But I would say, you know, here's the difference. Here's why it is. The search condition, you say, is what kind of a condition? Special. Special condition. And here's why. Here's why. He was sentenced to search your car, your house, your vehicle. Okay. I agree with the government. That would mean anything in the house, car, vehicle. But Joint Appendix 289, search the defendant's person, any property, house, residence. So here's an example's worth a thousand words. He could have an effect, a suitcase, papers, whatever. Have it at a friend's house. And under the written condition, that could be searched. That is an effect in any house. What he was sentenced to was your house. And that would make entirely good sense in the context of the crime he committed. Because he boxed up a bomb and mailed it to his wife and blew her up. If Judge Flanagan had. Don't you have to use your common sense looking at these things too? If Judge Flanagan had imposed that condition, the one that's in the written judgment, and we objected and she overruled us, I think this court would have no problem affirming her. The error is that she never imposed that condition, but it's in his written judgment. Look, this court is somewhat tired of Roger Singletary. The government is somewhat tired of Roger Singletary. I'm somewhat tired of Roger Singletary. But it's not our fault. The district judges keep putting conditions, at least in the Eastern District of North Carolina, keep putting written conditions down that aren't part of the sentence. And there's nothing to do other than just, I mean, Rogers and Singletary are clear on their face. This is a much more expansive condition. I'm also certainly not waiving our first Roger Singletary argument that comes down to, I think when she says she never uses the word incorporate, she never uses the word standing order. She says there are standard conditions in this district. She enumerates four of them with explanation, which would imply those are the only ones she's imposing. The written judgment imposes some other ones. I would agree, Judge Berner, I agree with my colleague that if you were to reach and agree with us on the first argument, he would be sent back for resentencing. Although the answer at the resentencing is that you've already served the maximum possible on all of your counts. So a bit of form over function there. But I do think technically that's how it would work. I also, Your Honor, agree with you about constitutional avoidance. And as much as if this does go back for a resentencing, we're not sure what Judge Flanagan's going to do. And so, you know, the double jeopardy issue may end up somehow going away, and she may go with that. He is, you were curious when he was getting out. According to the Bureau of Prisons website, he's getting out September 2027. If this court does nothing. But obviously, we think this was an erroneous sentencing. And he needs to be resentenced. At December of 2027, it's based on the 450 months? Yes, Your Honor. So based on the time he served, based on... What he's got now. Based on the Bureau of Prisons assumes, and I think in Mr. Bullis's case, it'll be true, assumes he will have his good time earned credit. And that number on their website tends to be pretty accurate. So last I checked, it was September 30th, 2027. But obviously, we're here saying that... We take judicial notice of that kind of thing? I think Your Honor can. I mean, it's the Bureau of Prisons website. It is BOP.gov. And you know... I'll make a word for it. I haven't ever looked at it. Yeah, no, it's... My clients are often concerned about when they're getting out. So that is a website I go to. And what we're talking about here, these conditions of release wouldn't apply unless he gets out. Yes. Though it's all speculative in that context, too. Yes. Maybe that would be taken into account in this harmless error review. And may I... What if he had a... May I... May I respond, Your Honor? Sure. Okay, thank you. I just... My time is up. Part of the reason this court has resentencing as a Roger Singletary remedy, which I know certain judges up here believe it's not a remedy we should have, is because... I mean, if you read Singletary, it makes sense. The incorporation, the fact that the supervised release conditions and the time you're serving, it's all part of this unified sentence, which I know sort of undercuts my first argument, but here we are. And so this really does need to go back because if he does end up with different conditions, she may end up wanting to impose a different amount of time. That's the argument for the plenary resentencing aspect of this Rogers error. Yes, Your Honor. Exactly, which I know, again... You potentially could end up getting your client more time. Yes. If it's a plenary resentencing. Yes. If you get a relief, I mean. That could very well happen. Obviously, this court would reject... If this court rejects our double jeopardy argument, then yes, a plenary resentencing is a plenary resentencing. I mean, there's some vindictive sentencing arguments out there, but realistically, yes. If he is being incredibly bad... Obvious example, if he is being bad in the Bureau of Prisons and he goes back for resentencing, the government has every right to bring that up and he could get more than 450. That said, he deserves a resentencing and that's what we're here asking for. Thank you very much.  Judge Berger, did you have anything else? No. No, thank you. We appreciate counsel's arguments and the case will be taken under advisement. And Judge Benjamin, I'll come down and greet counsel and then we'll call the next case.
judges: Robert B. King, DeAndrea Gist Benjamin, Nicole G. Berner